UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Insight Technology Inc.


     v.                         Civil No. 04-cv-74-JD
                                   Opinion No. 2009 DNH 045

SureFire, LLC


O R D E R


     Insight Technology Inc. brings a patent infringement action
against SureFire, LLC, alleging infringement of United States
Patent Number 6,574,901 ("the '901 patent").  The '901 patent is
titled "Auxiliary Device for a Weapon and Attachment Thereof" and
relates generally "to an auxiliary (e.g. illumination) device for
a weapon and, more particularly, to attaching an auxiliary device
to a weapon."  SureFire moves for summary judgment on its
affirmative defenses of anticipation and obviousness.

     After the parties filed motions for summary judgment, each
moved to strike certain supporting materials submitted by the
other.  As a result, some of the challenged supporting materials
were stricken from the record.  The parties were then directed to
file redacted versions of their motions.

     As is explained in more detail in the order of February 5,
2009, more than a year of filing and refiling was required to
address the court's order.  Despite the court's repeated

explanations, SureFire failed to remove the materials that had been struck.  See Order, Feb. 5, 2009 (doc. no. 228).  Therefore, only the redacted version of SureFire's memorandum is considered for purposes of summary judgment.

## Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

The law of the regional circuit governs procedural issues that are not unique to patent law.  Dominant Semiconductors SDN.BHD v. Osram GMBH, 524 F.3d 1254, 1260 (Fed. Cir. 2008). Therefore, the court applies the rules applicable to summary

2

judgment that govern in this district and the First Circuit.  Id.
Under the local rules of this district, a memorandum in support
of summary judgment must include a statement of material facts,
supported by record citations, to show that there is no genuine
factual issue to be tried.  LR 7.2(b)(1).  In response, the
opposing party must include a statement of material facts,
supported by record citations, to show that a genuine factual
issue exists.  LR 7.2(2).  "All properly supported material facts
set forth in the moving party's factual statement shall be deemed
admitted unless properly opposed by the adverse party."  Id.

SureFire bears the burden of proof on its affirmative
defenses of anticipation and obviousness.  When the party moving
for summary judgment also bears the burden of proof at trial, the
movant "cannot prevail unless the evidence that he provides on
that issue is conclusive."  E.E.O.C. v. Union Independiente de la
Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49,
55 (1st Cir. 2002) (internal quotation marks omitted).  Evidence
is conclusive if the moving party provides enough record evidence
that even when taken in the light most favorable to the
nonmovant, no reasonable jury could find against the movant, and
the nonmovant fails to provide sufficient evidence to raise a
genuine issue of material fact.  L & W, Inc. v. Shertech, Inc.,
471 F.3d 1311, 1318 (Fed. Cir. 2006).

A.  Anticipation

35 U.S.C. § 102 focuses on the novelty of an invention; "if a device or process has been previously invented (and disclosed to the public), then it is not new, and therefore the claimed invention is 'anticipated' by the prior invention." Net MoneyIN, Inc. v. Verisign, Inc., 545 F.3d 1359, 1369 (Fed. Cir. 2008). Anticipation is a factual question. Lievel-Flarsheim Co. v. Medrad, Inc., 481 F.3d 1371, 1377 (Fed. Cir. 2007). "Anticipation is established by documentary evidence, and requires that every claim element and limitation is set forth in a single prior art reference, in the same form and order as in the claim." Abbott Labs. v. Sandoz, Inc., 544 F.3d 1341, 1345 (Fed. Cir. 2008). "Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence." Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 690 (Fed. Cir. 2008); Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323, 1334 (Fed. Cir. 2008).

Insight asserts that SureFire infringes claims 1, 2, 5-13, 17, 21-25, 27, and 28 of the '901 patent. SureFire contends that those claims were anticipated by United States Patent No. 5,685, 105 ("the '105 patent"), which was granted to James W. Teetzel on November 11, 1997, following an application filed on January 8,

4

1995, as a continuation in part of an application filed on June 8, 1993.  As such, the '105 patent is prior art to the '901 patent.

The '105 patent, titled "Apparatus for Attaching a Flashlight to a Firearm," relates to attaching a flashlight to small firearms and to semi-automatic handguns and rifles in particular.  Purposes of the invention were to design a flashlight attachment that could be retrofitted to existing guns, that was easily moved from one weapon to another, that was inexpensive to produce, that was extremely light, that could be easily used with a keypad, and that could be powered by commercially available batteries.  SureFire asserts that the '105 patent shows an attachment device with two structural members and with a locking device comprised of two spring-biased bars called "locking pin plungers."  The pin plungers click upward into holes in the mount adapter.

Insight responds that the '105 patent does not disclose two locking pin plungers, a pin plunger that extends across a top surface of the housing, or a spring-biased mechanism, all of which are elements of claim 1 of the '901 patent.  SureFire acknowledges in its reply that a factual dispute exists as to whether the '105 patent discloses two pin plungers but asserts without any evidentiary support or argument:  "However, that

5

dispute is not material to the analysis set forth above."  Reply
at 2, n.2.  Therefore, a factual dispute exists, and its
materiality is not explained.

Claim 1 of the '901 patent also requires the spring-biased
mechanism to extend "across and along a top surface of the
housing."  The court construed that phrase to mean that "the
mechanism both traverses the housing and is located on the top of
the housing, although not necessarily in direct contact with the
surface of the housing."  To meet that element, SureFire offers
only a conclusory statement, without citation to a supporting
source, that a single locking pin satisfies that requirement by
its "significant width."  To the extent SureFire's argument can
be considered at all for purposes of summary judgment, it is not
sufficient to provide clear and convincing evidence of
anticipation.

With respect to the claim element for a spring-biased
mechanism, SureFire provides only attorney argument that the pin
plunger in the '105 patent inherently anticipated the spring-
biased mechanism claimed in Insight's '901 patent.  Insight
offers evidence that it does not.[1]  Because all reasonable

---

[1]Although SureFire denigrates the evidence Insight offers,
referring to its previous motion to strike, that part of its
motion was denied.  See Order, Nov. 1, 2007 (doc. no. 137).

factual inferences are resolved in Insight's favor, SureFire has not shown that it is entitled to summary judgment on anticipation.  See Crown Packaging Tech., Inc. v. Rexam Beverage Can Co., --- F.3d ---, 2009 WL 678743, at *4 (Fed. Cir. 2009).

B.  Obviousness

A patent is invalid due to obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time of the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).  Obviousness is a legal determination based on underlying findings of fact which include "the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the art."  Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd., --- F.3d ---, 2009 WL 539910, at *6 (Fed. Cir. Mar. 5, 2009).  In deciding obviousness, "a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions."  KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 127 S. Ct. 1727, 1740 (2007).  The party challenging a patent as obvious bears the burden of proving

7

invalidity by clear and convincing evidence.  Sanofi-Synthelabo
v. Apotex, Inc., 550 F.3d 1075, 1086 (Fed. Cir. 2008).

SureFire contends that the spring-biased mechanism claimed
in the '901 patent is a common spring loaded latch called a
detent, which has been used for a long time in many products
including firearms.  SureFire further contends that spring loaded
latches have commonly been used with rails that provide mounting
systems for a variety of auxiliary devices.  SureFire cites the
'105 patent, the "GB '444 patent," United States Patent No.
4,825,744, United States Patent No. 4,944,213, and Insight's
LOCOM LAM as prior art that in combination disclose all of the
elements of the claims of the '901 patent.

Insight does not challenge the scope and content of the
prior art references raised by SureFire or the requisite level of
skill in the field.  Instead, Insight argues that SureFire has
not shown a motivation to combine the known references into the
invention of the '901 patent.  SureFire responds that evidence of
motivation is not required to prove obviousness, although
motivation may be relevant, and that, nevertheless, evidence of
motivation exists in this case.

Motivation in the context of an obviousness analysis is a
malleable concept, which requires consideration of the nature of
the problem and common sense.  KSR, 127 S. Ct. at 1741.  When the

invention "falls into a very predictable field," the record "may more readily show a motivation to combine known elements to yield a predictable result." Rothman v. Target Corp., 556 F.3d 1310, 1319 (Fed. Cir. 2009).  Motivation may be found in a design need or market pressure with a limited number of solutions.  Ball Aerosal & Specialty Container, Inc. v. Limited Brands, Inc., 555 F.3d 984, 991 (Fed. Cir. 2009).  Similarly, "'if a person of ordinary skill can implement a predictable variation,'" the result is likely to be obvious.  Boston Scientific Scimed, Inc. v. Cordis Corp., 554 F.3d 982, 991 (Fed. Cir. 2009) (quoting KSR, 127 S. Ct. at 1740).  In other words, if the combination of known elements would be "obvious to try" to a person with ordinary skill in the art, it is obvious.  KSR, 127 S. Ct. at 1742.  When "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate."  Id. at 1745-46.

Activities that led to the '901 patent began in July of 1996 when Jim Shorthill of Glock, Inc., a gun manufacturer, contacted Randy Shaw, Director of Operations at Insight.  Shorthill wanted a sample of an Insight laser aiming module, LAM2, which had been developed for a different gun manufacturer.  The LAM2 slid onto rails located under a pistol barrel and was attached by a

thumbwheel that screwed into the trigger guard.  Shaw told
Shorthill that the LAM2 was not for sale and suggested that the
companies meet to discuss a joint project.  Glock provided a
Glock 17 pistol frame in July of 1996 for Insight to evaluate.

On November 5, 1996, Wallace Woodman, a principal mechanical
engineer at Insight, spoke to Chris Edwards, from Glock, about
the possibility of the two companies working together.  In
preparation for a meeting between the companies, Woodman created
a computer model of the Glock 17 pistol, modified to include
rails that would accept the existing LAM2 device.  Insight and
Glock signed a non-disclosure agreement on December 16, 1996, to
allow the companies to work together.  Shaw met with Edwards and
Gaston Glock on December 18 and presented the capabilities of the
existing LAM2 and an alternative shorter design, both with
thumbwheel attachment mechanisms.  They discussed designs and
concluded that the LAM2 was too long and the shorter design was
not ideal because of the thumbwheel attachment.

Insight provided another design in January.  That design
showed attachment using a dovetail mounting groove, rather than
the standard Weaver rails, and continued the thumbwheel
attachment system.  Glock personnel began to discuss their
dissatisfaction with Insight's designs and the changes needed,

including standard Weaver rails and a spring-tensioned clip to fit into a notch on the underside of the receiver.

In reaction to Glock's objection to the thumbwheel design, Kenneth Solinsky, the founder and president of Insight, suggested that Glock include a cross-slot in the rails of its pistol frame to fix the position of the attachment. Solinsky told Glock that if the pistol were modified to include the slot, Insight would design an attachment mechanism to engage with the slot. Shaw also discussed the slot attachment system with Glock and agreed that Insight would move forward with a design for a modified LAM2 that would engage with a cross-slot in the open rail system.

The conventional system of attachment to open rails was by a "rail grabber," which had the drawback of requiring a two-step attachment process. Between February and May of 1997, Woodman worked with other engineers at Insight to design a mounting mechanism that would use rails with a cross-slot. Woodman thought of using a spring-biased bar that would engage the slot and fix the attachment on the pistol. He and his team modified the LAM2 design to fit that plan. On May 21, 1997, Edwards, from Glock, sent Shaw a diagram that included a cross-slot and detailed dimensions of the groove on either side of the pistol frame.

11

Edwards states that Insight expressed reservations about using the slot fastening system because without a screw attachment it could loosen with time and the module would be lower in relation to the pistol grip.  Insight agreed to make a prototype of the rails with the notch/spring-tensioned attachment system.  Glock sent drawings showing the notch being closer to the trigger guard.  Glock and Insight next communicated about producing the module, and Edwards represents that Glock was dissatisfied with the price from Insight and was considering terminating the project.  The attachment system Insight developed in response to Glock's interest became the '901 patent.

In January of 1997, Glock representatives talked with SureFire representatives at a trade show about developing a weapon light that would be compatible with its new rail attachment design for Glock pistols.  During February and March of 1997, Glock representatives wrote to SureFire about the progress toward an attachment system design.  John Matthews, SureFire's president, represents that in July, Glock wrote to SureFire to report that the rail system for the pistols would soon be complete and that it was looking for an accessory to work with the rail system that would have "easy ambidextrous use" and "easy/quick mounting on frame (click on solution --simple/quick removal)."  The Glock drawing of the rail design showed an open

12

ended Weaver rail with a transverse notch located close to the
trigger guard.

Matthews states that when he saw the Glock drawings, showing
the open rail and the transverse notch, he immediately thought of
using a spring-biased mechanism to fix the position of the light
along the rail.  In response, Matthews and another SureFire
engineer, Paul Kim, developed a mounting system design that used
a pivoting plate with a projection, rather than a bar, to engage
in the transverse notch.  SureFire used that system for its M110
Weaponlight, which was first shown at a tradeshow in 1998.  Due
to malfunction problems, the M110 Weaponlight was withdrawn from
the market.

SureFire's theory is persuasive that the spring-biased
mechanism on an open rail system was a predictable solution to
the problem Glock posed for attaching a light to its pistols.

> When there is a design need or market pressure to solve
> a problem and there are a finite number of identified,
> predictable solutions, a person of ordinary skill has
> good reason to pursue the known options within his or
> her technical grasp.  If this leads to the anticipated
> success, it is likely the product not of innovation but
> of ordinary skill and common sense.

KSR, 127 S. Ct. at 1742; accord Abbott Labs., 544 F.3d at 1351.
SureFire's evidence to support its theory, however, does not rise
to the level of conclusive evidence of obviousness, which is
necessary to support summary judgment here.

13

In its memorandum, SureFire provided no evidentiary support for its assertion that Glock requested Insight to develop a light that would attach to an open rail with a notch at a particular location or that Insight used Glock's rail design.  Insight provided evidence to the contrary.  In its reply, although SureFire accurately cited to Matthews's declaration in support of its motivation theory, the remainder of its citations ("#204-11 at 4-5; #204-13 [129:3-15]; #204-26[39:1-3]"), Reply at 7, do not appear to correlate to relevant evidence.  Matthews explains that it was obvious to him to use a spring-biased mechanism in July of 1997 in response to Glock's design that included a transverse notch in the rails.  Undisputed evidence is lacking that Glock provided the same design to Insight <u>before</u> Insight developed the system that later became the '901 patent.

The question is close, and SureFire may prevail at trial. The burden is high, however, to prove an affirmative defense of patent invalidity on summary judgment.  In the absence of conclusive evidence that the invention of the '901 patent would have been obvious to one with ordinary skill in the art at the time of the invention, summary judgment is not appropriate.

14

Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document 204) is denied.

Some of the issues in the case have been addressed for purposes of summary judgment and additional issues will be addressed and possibly resolved pursuant to Insight's pending summary judgment motion.  When that motion is resolved, trial will be scheduled on any remaining issues.  This might be an appropriate time for the parties to undertake a realistic review of the infringement claims and SureFire's defenses and to consider mediation before the court acts on the remaining motion. In any event, the court, at some point, will require the parties to mediate prior to trial.

SO ORDERED.

_Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

April 3, 2009

cc:  Thomas A. Brown, Esquire
     Laura L. Carroll, Esquire
     Jonathan Hangartner, Esquire
     Lawrence K. Kolodney, Esquire
     Diane A.D. Noel, Esquire
     Jonathan M. Shirley, Esquire
     Craig R. Smith, Esquire
     Daniel E. Will, Esquire
     Leigh S. Willey, Esquire